IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CORALations, et al.,<br><br>    Plaintiffs<br><br>    vs.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY, et al.,<br><br>    Defendants | CIVIL NO. 02-1266 (JP) |

**OPINION AND ORDER**

The Court has before it a Motion for Summary Judgment (**No. 51**) filed by Plaintiffs CORALations and American Littoral Society, as well as a Cross-Motion for Summary Judgment (**No. 55**) filed by Defendant Environmental Protection Agency ("EPA").

Plaintiff CORALations, a non-profit Caribbean coral reef conservation organization, and Plaintiff American Littoral Society, a non-profit public interest environmental organization, filed the above-captioned Complaint on February 20, 2002, alleging that the EPA failed to follow standards set forth by the Clean Water Act ("CWA"), 33 U.S.C. § 1313. In their Amended Complaint, Plaintiffs set forth four claims. The scope of the motions presently before the Court is limited to Claim Four of Plaintiffs' Amended Complaint, which alleges that the EPA's failure to prepare and propose water quality standards violates the CWA. In particular, Plaintiffs allege that Defendant EPA has failed to ensure that Puerto Rico has antidegradation implementation procedures for its waters.

CIVIL NO. 02-1266 (JP)            -2-

Defendants filed a Cross-Motion for Summary Judgment as to Claim Four, alleging that Puerto Rico adopted antidegradation methods and submitted documents identifying such methods to the EPA, which approved Puerto Rico's submission on July 9, 2004. Defendants argue that because the EPA has approved Puerto Rico's submission, Plaintiffs' Claim Four has become moot.

The Court previously granted summary judgment to Plaintiffs as to Claims One and Three (No. 47) of their Amended Complaint. Claim Two is no longer before the Court because Plaintiffs pled it in the alternative to Claim One.  Thus, Claim Four alone remains before the Court.

## I. **MATERIAL FACTS NOT IN GENUINE DISPUTE**

The following material facts are properly supported, and are not in genuine issue or dispute.

1. On September 21, 1990, the Puerto Rico Environmental Quality Board ("PREQB") revised its water quality standards ("WQS") and submitted these "revisions" to the EPA.
2. On May 2, 1991, PREQB submitted to the EPA changes to the September 21, 1990 revisions: "[The Director of the Water Management Division wrote] to provide [the Director of Water Quality Area for the Puerto Rico Environmental Quality Board] with the results of the EPA Region II review of the proposed revisions to the Puerto Rico Water Quality Standards Regulation ("PRWQSR")."

CIVIL NO. 02-1266 (JP)          -3-

3. On July 3, 1991, Richard Caspe, the Regional Administrator of Region II, wrote to Tomás Rivera, regarding the issue of Class SC waters under Puerto Rico's WQS in the CWA.

4. On or about September 4, 1992, Caspe again wrote to Rivera in a letter ("1992 Letter") that summarized the EPA's review of the numeric criteria revisions that the PREQB submitted to the EPA.

5. In the 1992 Letter, Caspe wrote that the PREQB must adopt, during the next triennial review, "implementation procedures for its Andidegradation policy."

6. In May 1993, the Regional Administrator of the EPA Region II wrote to PREQB regarding problems with the revisions concerning Class SC waters under CWA section 303(c)(3).

7. On March 28, 2002, the EPA approved eleven of the revisions under the CWA section 303(c)(3), 33 U.S.C. § 1313(c)(3).

## II. **SUMMARY JUDGMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993); Lipsett v. University of Puerto

CIVIL NO. 02-1266 (JP)          -4-

Rico, 864 F.2d 881, 894 (1st Cir. 1998).  Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A fact is material if, based on the substantive law at issue, it might affect the outcome of the case.  Id. at 248, 2509; Mack v. Great Atl. & Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).  A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor.  See Anderson, 477 U.S. at 248; Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1983).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial."  See First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. Id.; see also Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1992).  On issues where the non-movant

CIVIL NO. 02-1266 (JP)           -5-

bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion.  <u>Anderson</u>, 477 U.S. at 256-57.

**III.  ANALYSIS**

    **1.  Background on the Clean Water Act of 1972**

The Clean Water Act, 33 U.S.C. § 1251 et seq., was passed by Congress "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a) (2003).  The CWA seeks to eliminate "the discharge of pollutants into the navigable waters" of the United States, and to "provide[] for the protection and propagation of fish, shellfish, and wildlife and provide[] for recreation in and on the water."  <u>Id.</u> at §§ 1251(a)(1) and (a)(2).  The United States Supreme Court has made clear that the CWA requires "each State, subject to federal approval, to institute comprehensive water quality standards establishing water quality goals for all intrastate waters."  PUD No. 1 of <u>Jefferson County v. Washington Dept. of Ecology</u>, 511 U.S. 700, 704 (1994).

Under a 1987 amendment to the Act, State water quality standards must include an antidegradation policy, which is "a policy requiring that state standards be sufficient to maintain existing beneficial uses of navigable waters, preventing their further degradation."  Id. at 705; see also 33 U.S.C. § 1313(d)(4)(B).  Pursuant to this statute, the EPA promulgated a regulation governing antidegradation, 40 C.F.R. § 131.12.  Section 131.12 requires States to "develop and adopt a statewide antidegradation policy and identify methods for

CIVIL NO. 02-1266 (JP)          -6-

implementing such policy." 40 C.F.R. § 131.12(a) (2003). Section 131.12 further provides that "the antidegradation policy and implementation methods shall, at a minimum, be consistent" with certain federal standards specified in the regulation. Id. States are required to submit their antidegradation policy and implementation procedures to the EPA. 33 U.S.C. § 1313(c)(2)(A). If the State's policy and procedures are consistent with the minimum federal standards, the EPA has sixty days to approve the procedures. Id. at 1313(c)(3). If not the procedures are not consistent with the minimum federal standards, the EPA must, within ninety days:

> notify the State and specify the changes to meet such requirements. If such changes are not adopted by the State within ninety days after the date of notification, the Administrator shall promulgate such standard pursuant to paragraph (4) of this subsection.

Id. Paragraph four sets forth that the agency must "promptly prepare and publish proposed regulations setting forth a revised or new water quality standard." 33 U.S.C. § 1313(c)(4).

### 2. **Procedural Background**

On March 28, 2002, after Plaintiffs' filed their Complaint, Puerto Rico completed its first triennial review and submitted revised WQSs to the EPA ("2003 WQS Revisions"). The EPA approved the 2003 WQS Revisions on June 26, 2003, and so notified the Court. On August 14, 2003, the Court granted Plaintiffs' cross-motions for summary judgment as to Claim One and Claim Three. For Claim One, the Court ordered the EPA to prepare, publish and promulgate revised WQSs for any of the six disapproved WQSs that are not consistent with the

CIVIL NO. 02-1266 (JP)            -7-

CWA.  On January 26, 2004, the EPA complied.  See 69 Fed. Reg. 3514 (Jan. 26, 2004) (promulgating a new Class SC WQS to ensure that Puerto Rico's coastal waters are safe for human contact).  For Claim Three, the Court ordered the EPA to approve or disapprove the 1990 WQS Revisions.  On October 8, 2003, the EPA complied and approved an "overlooked" component of the 1990 WQS Revisions.  Claim Four is still before the Court.

Plaintiffs' Fourth Claim alleges that Defendant EPA has not performed its duty to prepare and publish WQSs for the aspects of Puerto Rico's existing WQS that the EPA determined were not consistent with the CWA.  In February of 1992, the EPA determined that five aspects of Puerto Rico's existing WQSs were either inconsistent with the CWA or nonexistent, and thus that a revised or new standard was necessary to satisfy the requirements of the CWA.  After the Court's rulings on Claim One and Claim Three (Docket No. 47), two of the five non-existent WQSs are still at issue: (1) methods to apply the State's antidegradation policy and implementation methods to wetlands; and (2) implementation procedures for its antidegradation policy.

### 3.    **Defendants failed to fulfill their mandatory duty**

Plaintiffs argue that EPA has not performed the underlying duty of preparing and publishing proposed regulations on the two outstanding WQSs needed to comply with the CWA.  For the reasons stated herein, the Court agrees.

CIVIL NO. 02-1266 (JP)          -8-

First, the EPA argues that the 1992 Letter from Richard Caspe, Director of the Water Management Division of EPA, is not a "determination" for purposes of the CWA, and therefore its mandatory duty to act under CWA has not been triggered. In this letter, Caspe set forth aspects of Puerto Rico's WQSs which were either inconsistent with the CWA or nonexistant. This Court already found that Caspe spoke in the capacity of "Administrator" in his 1992 Letter (No. 47). The Court further held that "the EPA's duty to promptly prepare and publish a revised Class SC Waters WQS was triggered by this letter." (No. 47). Accordingly, the Court holds that Defendants' argument fails. As stated above, the EPA has yet to prepare and publish new standards on the two remaining aspects of Puerto Rico's WQSs which were deemed either inconsistent with the CWA or nonexistant by the EPA. These two aspects are the following: (1) methods to apply the State's antidegradation policy and implementation methods to wetlands; and (2) implementation procedures for its antidegradation policy. In cases where the EPA "determines that a revised or new standard is necessary to meet the requirements of [the CWA]," EPA must "promptly prepare and publish proposed regulations setting forth a revised or new water quality standard." 33 U.S.C. § 1313(c)(4)(B). Caspe's letter triggered the EPA's mandatory duty, yet the EPA has failed to both prepare and publish any regulations related to these two aspects.

CIVIL NO. 02-1266 (JP)          -9-

Defendants allege that on July 9, 2004, Walter Mugdan, the Director of Environmental Planning and Protection for EPA Region 2, issued a letter on the EPA's behalf approving Puerto Rico's identification of antidegradation implementation methods as consistent with all applicable regulatory requirements. Specifically, EQB identified methods for implementing Puerto Rico's antidegradation policy. Defendants argue that these methods have already been implemented, and Plaintiffs' Claim Four is therefore moot. Claim Four is not moot, however, because EPA has yet to comply with the CWA to the extent that it must "prepare and publish" antidegradation implementation procedures for Puerto Rico. The CWA sets forth that, when a State's procedures are not consistent with the minimum federal standards, the agency must "promptly prepare and publish proposed regulations setting forth a revised or new water quality standard." 33 U.S.C. § 1313(c)(4). In their Motion for Summary Judgment, Defendants alleged that EQB's intention is to adopt the regulations, and "expects to issue the proposed rule for notice and comment at or about the end of this month." (No. 56). Plaintiffs allege that Defendants have not prepared or published any antidegradation implementation procedures for Puerto Rico. The EPA fails support its contradictory allegations by referencing publications involving the two remaining aspects of Puerto Rico's WQSs which were deemed either inconsistent with the CWA or nonexistant by the EPA. Further, on January 22, 2007, pursuant to a Court Order (No. 75), Defendants filed an Informative Motion

CIVIL NO. 02-1266 (JP)            -10-

(No. 78) with updated information. In this Motion, Defendants likewise fail to cite relevant publications.

Seeing that the EPA has failed to comply with this provision of the CWA, the Court could end its analysis of this issue here. However, the Court will continue its analysis, citing other actions indicative of noncompliance on the part of both Puerto Rico and the EPA. For instance, Puerto Rico never adopted what Defendants purport to approve. To "adopt" a standard, the PREQB must (1) provide public notice, (2) provide an opportunity for comment, (3) present the rule to the Secretary of State, and (4) publish the rule. 3 L.P.R.A. §§ 2122, 2122, 2126. Moreover, EPA regulations specify that state adoption be signified with certification by the state's Attorney General. 40 C.F.R. § 131.6(e). Puerto Rico never adopted new antidegradation implementation methods consistent with Puerto Rico law and EPA regulations, and therefore any alleged approval by EPA is not valid.

Defendants argue that they are not required to actually identify methods for implementing its procedures in regulatory form. The Court agrees that this is true generally for identifying methods, however in the instant case, the EPA has determined that Puerto Rico's antidegradation implementation policies are nonexistent, and therefore the procedural steps fall under the guidance of Section 1313(c)(4), which requires published proposed regulations. Since Congress has directly spoken to the precise question at issue, namely, which procedures the EPA must follow when a State's WQSs are

CIVIL NO. 02-1266 (JP)          -11-

either inconsistent with the CWA or nonexistant, the Court need not read into Congress' intent. See <u>Chevron U.S.C. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842 (1984) (stating that when reviewing a federal agency's interpretation of a statute that it administers, the court first asks "whether Congress has directly spoken to the precise question at issue.").

In light of the above, Plaintiff's Motion for Summary Judgment is **GRANTED,** and Defendants' Cross-Motion for Summary Judgment is **DENIED.** The EPA is hereby **ORDERED** to comply with the CWA by preparing and publishing proposed regulations setting forth a revised or new water quality standard as to these two outstanding aspects within sixty days.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of February, 2007.

               s/Jaime Pieras, Jr.
               JAIME PIERAS, JR.
             U.S. SENIOR DISTRICT JUDGE